**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MICHAEL A. SHIPP<br>UNITED STATES DISTRICT JUDGE | CLARKSON S. FISHER COURTHOUSE<br>402 EAST STATE ST., ROOM 7000<br>TRENTON, NJ 08608<br>609-989-2009 |

**Not for Publication**

LETTER OPINION

October 8, 2013

**VIA CM/ECF**
All counsel of record

    Re:    **R.C. and J.C. o/b/o X.C. v. Great Meadows Regional Board of Education**
            **Civil Action No. 12-5241 (MAS) (TJB)**

Dear Counsel:

This matter comes before the Court upon the cross Motions for Summary Judgment filed by the Parties. (ECF Nos. 15, 17.) Each party filed a Response. (ECF Nos. 20-21.) The Court has carefully considered the submissions and decided the motions without oral argument pursuant to Local Civil Rule 78.1. After careful consideration of the record, and for the reasons set forth below, this matter is REMANDED for further administrative proceedings.

**I.**    **Background**

X.C. is a nine[1] year old boy with severe developmental and educational disabilities. He has been diagnosed with global developmental delay, hypotania, hypotonic cerebral palsy and has substantial expressive and receptive language disorders that prohibit his placement in a typical

---

[1] At the time Defendant sought to move X.C. into an in-district placement, he was seven years old. The various certifications and briefs refer to X.C.'s age as either seven or eight, depending on the date the respective document was drafted.

educational setting. X.C. has been classified as "Other Health Impaired" by Defendant Great Meadows School District (the "District" or "Defendant"). He requires individual educational instruction, occupational therapy, speech therapy and physical therapy. Prior to X.C. beginning preschool, the District and X.C.'s parents, R.C. and J.C. ("Plaintiffs"), reached an agreement whereby X.C. would attend school at an out-of-district private school named P.G. Chambers ("PGC") that serves children with learning disabilities similar to X.C.'s.

X.C. has attended PGC since July 2007 and both Parties agree that he has progressed well while attending school there. In late 2010, the District began to raise the issue of creating a program suitable for X.C. within the District. This proposed program would allegedly consist of individualized classroom instruction by a special education teacher specifically hired to staff X.C.'s classroom. X.C. would also allegedly receive occupational, speech and physical therapy substantially similar to the services he receives at PGC. Although not clear from the record, and disputed by Plaintiffs, X.C. would either be the only child in this newly developed program/classroom or would have one other similarly situated child in his classroom. The District contends that X.C. would have expanded exposure to typical children every day, as opposed to PGC, where his exposure is limited to similarly disabled peers and his teachers.

Plaintiffs have objected to X.C.'s transfer from PGC into the District's newly created program. Their objections, generally, consist of: 1) the fact that X.C. does not adapt well to transitions that the transition plan offered by the District was either non-existent or insufficient; 2) the fact that X.C. may be alone in a classroom with an adult for a significant period of each school day, thereby negatively affecting X.C.'s socialization skills and development; 3) concerns related to the newly created nature of the District's proposed program and the fact that Plaintiffs were, and continue to be, unable to observe the program to their satisfaction; and 4) an allegation that the proposed program will not provide X.C. with a meaningful educational benefit. Defendant

contends that the program it has proposed will meet its obligations under state and federal law and will provide X.C. with a free appropriate public education ("FAPE").

Following Plaintiffs' objections to transitioning X.C. into the District's program in June 2011, the "stay-put" provisions of the Individuals with Disabilities Education Act ("IDEA") took effect and X.C. has remained at PGC throughout the administrative and judicial review of his placement. *See* 20 U.S.C. § 1415(j).

Administrative review of the Parties' dispute took approximately one year and on June 12, 2012, Administrative Law Judge Gail M. Cookson (the "ALJ") upheld Defendant's decision to transfer X.C. in-district.[2] Upon consent of both Parties, the ALJ decided the dispute without a hearing or any witness testimony. Each party submitted certifications in support of its positions which were, obviously, not subject to cross examination or challenge as to credibility. The Parties also submitted legal memoranda in support of their positions. Three days after submission of the Parties' various documents, the ALJ rendered her decision.

## II. Analysis

### A. The IDEA Generally

The IDEA entitles a disabled child to a FAPE, which "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995)). School districts are required to review a child's Individualized Education Program ("IEP") "at least annually to determine whether the child is reaching the stated goals. In addition, the IEP team is to revise the IEP to address lack of progress, necessary changes arising

---

[2] Various attempts at settlement and mediation occurred prior to the ALJ's determination.

from reevaluation of the child, and parental input, among other things." *Id.* at 265 (citing 20 U.S.C. § 1414(d)(1)(A)(4)).

The IDEA contains a main-streaming component, also known as the least-restrictive environment ("LRE") requirement, which evinces Congress' intent that disabled children receive education in a setting alongside their typical peers to the maximum extent possible. 20 U.S.C. § 1412(a)(5)(A). The Third Circuit has defined the "least restrictive environment [as the setting] that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir. 1995). The preference for mainstreaming, however, is secondary to the IDEA's goal that children receive a "meaningful educational benefit." *S.H.*, 336 F.3d at 272. Importantly, a "School District cannot bootstrap the meaningful educational benefit with the LRE requirement [because the] IDEA requires that disabled students be educated in the least restrictive *appropriate* educational environment." *Id.* Stated differently, "[i]f the educational environment is not appropriate, then there is no need to consider whether it is the least restrictive." *Id.*

Whether a proposed placement will provide a meaningful educational benefit is "an individual determination personal" to the child at issue. *Id.* at 271. Critical to X.C.'s case, once a district has determined that an out-of-district placement is appropriate, any ensuing decision to bring the child back into the district (or to transfer the child to any other destination) must not be "detrimental" to the child and is necessarily informed by the child's current placement. *Id.* at 272 ("In other words, if a change in [a child's] placement will be detrimental, this is a factor in determining whether the new placement will achieve a meaningful educational benefit."). This

4

implicitly requires the ALJ, or the district court, to consider the adequacy and qualities of the proposed placement against the qualities and attributes of the current placement. *Id.*[3]

## B. Standard of Review

Review of an ALJ's decision in the IDEA context takes place under a modified *de novo* standard. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, "a district court gives 'due weight' and deference to the findings in the administrative proceedings." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (internal citations omitted.) Factual findings from the administrative proceedings are to be considered prima facie correct and a "federal district court . . . [is] required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H.*, 336 F.3d at 270. "The 'due weight' obligation prevents district courts from imposing their own view of preferable educational methods on the states." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citing *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993)). If "an ALJ has heard live testimony and determined that one witness is more credible than another witness, [that] determination is due special weight." *D.S.*, 602 F.3d at 564 (citing *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)). The Court exercises plenary review over the ALJ's legal conclusions. *P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

---

[3] Defendant argues, correctly, that an IEP is typically only examined to determine whether it provides a "basic floor of opportunity" and that it need not provide "the optimal level of services" that a parent may want for their child. (Def.'s Br. 15, ECF No. 17-1) (citing *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 590 (3d Cir. 2000)); *see also S.H.*, 336 F.3d at 271. However, the Third Circuit's binding precedent in *S.H.* unambiguously applies in situations such as the one currently before the Court. As such, the ALJ was *required* to consider the educational benefit gained at PGC to the prospective benefits of the in-district placement. If change from one environment to the other would be detrimental, that is a *factor* which mitigates *against* a finding that the in-district placement would provide a FAPE.

5

### C. Discussion

The ALJ's decision relied upon thirteen undisputed facts. One of those factual findings included the determination that the District's proposed "classroom for multiply disabled students would allow the students to remain in their home community without transportation outside the district with the opportunity to interact with typical peers in a less restrictive environment." (ALJ Decision 4, Ex. 26 to Barger Cert., ECF No. 14-3.) The ALJ's "legal analysis and conclusions" heavily stressed the "strong statutory preference for educating children in the 'least restrictive environment'" but also noted that the District could not "'bootstrap the meaningful educational benefit with the least restrictive environment requirement'" and that consideration of the services X.C. received at PGC was a factor that must be considered as part of a determination whether Defendant's IEP would offer X.C. a FAPE. (*Id.* at 7.)

In *S.H.*, the Third Circuit upheld the determination of an ALJ who found that the defendant school district's plans to return a hearing impaired child to an in-district public school with additional mainstreaming possibilities did not offer a meaningful educational benefit. *S.H.*, 336 F.3d at 272-74. First, the court concluded that the mainstreaming possibilities were *de minimis*. *Id.* at 272. Second, the court noted that the ALJ had conducted a detailed factual comparison of the child's current school and proposed placement and noted that "significant differences" existed in their respective educational programs such that the proposed in-district school would be "detrimental" to the child. *Id.* at 273. Those differences were the key factors in the Court concluding that the proposed placement would not provide a FAPE. As such, it affirmed the decision of the ALJ.

Here, the Court is presented with a case similar to *S.H.* but different in one crucial aspect: the decision of the ALJ in *S.H.* was based upon the factual universe developed at an evidentiary

6

hearing. No such hearing occurred here.[4] Rather, the ALJ's decision seemingly indicates that she wholesale adopted the District's contention that it would offer a "mirror-image" of the program offered at PGC. (*Compare* ALJ Decision at 8 *with* Muller Cert.[5] ¶ 9, Rymon Cert. ¶ 18, Simone Cert. 16, Peck Cert. ¶ 18.) The Court is aware that it must give the factual conclusions of the ALJ due weight. That deference, however, is overcome when the Court can point to non-testimonial evidence in the record that contradicts the ALJ's findings. Although clear evidence to overturn the ALJ does not exist in the record, there is strong evidence in the record contradicting the ALJ's conclusion that the in-district placement would be a mirror-image of PGC's program. Importantly, the ALJ did not explain a basis for discarding the opinions of X.C.'s teachers and therapists at PGC. Those opinions included statements that X.C. "would evidence regressive behaviors if he were removed from" PGC and that the staff at PGC all agreed that "X.C. should remain at" PGC. (Fernando Cert.[6] ¶¶ 22-23; David Cert. ¶¶ 14-15; Jacobs Cert. ¶¶ 12-13; Haggerty Cert. ¶¶ 19-20; Hearne Cert. ¶¶ 17-18.)

Additionally, and contrary to the holding in *S.H.*, the ALJ's decision did not reflect a sufficient factual analysis of the impact of the fact that X.C. may be alone in a classroom for a significant period of time each day and whether that would detrimentally affect his ability to receive a meaningful education, especially compared to the more active classroom environment at PGC. The ALJ's statement that such a small class size may be a factor that attracts parents to places such

---

[4] The Court is aware that the Parties, both here and before the ALJ, agreed that no hearing was necessary and that the Parties would rely upon their respective certifications. That does not alter the Court's conclusion that the factual record here requires further development and that the ALJ is required to hold an evidentiary hearing regarding the conflicting evidence.

[5] The certifications listed in this citation are all contained in Exhibit 35 to the Barger Certification, ECF No. 14-4.

[6] The certifications listed in this citation are contained in Exhibits 29-33 to the Barger Certification, ECF No. 14-4.

as Great Meadows does not meet the detailed factual analysis called for in *S.H.* The ALJ's decision is also missing any analysis of whether the mainstreaming opportunities in-district would be meaningful, or as was the case in *S.H.*, *de minimis*.

The Court is careful to note that it is not substituting its reading of the record for that of the ALJ. The Court cannot conclude, however, that the ALJ's decision was based upon a sufficient factual analysis of X.C.'s proposed placement and that the in-district environment would provide X.C. with a meaningful education in light of his progress at PGC. As such, this matter is remanded for further proceedings, including an evidentiary hearing. *See Carlisle*, 62 F.3d at 526 (remand for further administrative proceedings appropriate); *L.M. ex rel. H.M. v. Evesham Twp. Bd. of Educ.*, 256 F. Supp. 2d 290, 305 (D.N.J. 2003) (same). The ALJ shall take special care to factor in consideration of the possibility that X.C.'s placement in-district, as compared to PGC, will detrimentally affect his ability to receive a free appropriate public education.

## III. Conclusion

For the reasons stated above, and other good cause shown, this matter is REMANDED for further administrative proceedings. An appropriate order will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE